UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| LEXFIT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 20-413-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| WEST BEND MUTUAL | ) | **MEMORANDUM OPINION** |
| INSURANCE COMPANY, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

Like many states, Kentucky reacted to the COVID-19 pandemic by ordering temporary closures of certain businesses.[1] Plaintiff LexFit, LLC, operates one business that was forced to stop in-person activities in March 2020. [Record No. 1-1, ¶¶ 17–18] Now, over a year later, it is also one of many businesses arguing that its business owners' insurance policy covers losses incurred during its temporary closure.[2] Its insurer, Defendant West Bend Mutual Insurance Company ("West Bend"), has filed a motion for judgment on the pleadings, arguing that the terms of the policy do not extend to these unprecedented circumstances. [Record Nos. 23, 35] Because the Court concludes that the purely economic losses suffered by LexFit during

---

[1]  *Kentucky Gov. Andy Beshear Orders Hair Salons, Spas, Gyms, Theaters to Close by 5 p.m. Wednesday*, WDRB (Mar. 18, 2020), https://www.wdrb.com/news/kentucky-gov-andy-beshear-orders-hair-salons-spas-gyms-theaters-to-close-by-5-p/article_0ba7c534-6890-11ea-8d6f-3b5a49ed7c62.html.

[2]  As of May 17, 2021, 1,880 state or federal cases disputing COVID-related insurance coverage have been filed. *Covid Coverage Litigation Tracker*, INSURANCE LAW CENTER, https://www.cclt.law.upenn.edu (last visited June 9, 2021).

its closure do not qualify as the "direct physical loss[es]" covered by the policy, West Bend's motion will be granted.

I.

LexFit operates a fitness center in Lexington, Kentucky. [Record No. 1-1, ¶ 1] Near the beginning of the global COVID-19 pandemic, its business was one of many forced to close by Kentucky authorities. [*Id.* at ¶¶ 17–18] Kentucky Governor Andy Beshear declared a state of emergency "due to the outbreak of COVID-19, a public health emergency." [Record No. 1-1, p. 14–15 (hereinafter "the Closure Order").] The Closure Order here, issued by Kentucky's Cabinet for Health and Family Services on March 17, 2020, directed "public-facing businesses" to "cease all in-person operations." [*Id.*] The list included "gyms and exercise facilities" like LexFit. [*Id.*]

Faced with closure, LexFit submitted a claim to West Bend for business income loss. [*Id.* at ¶ 13] West Bend denied the claim, finding that no "direct physical loss of or damage to property" caused by a "Covered Cause of Loss" had occurred and that a virus exclusion applied. [*Id.* at pp. 16–18 (Denial Letter).] Following the denial, LexFit sued West Bend and Eric C. Friedlander, Secretary of Kentucky's Cabinet for Health & Family Services,[3] in Fayette Circuit Court. [Record No. 1-1] It sought declaratory relief, alleging that West Bend violated the Kentucky Insurance Code and Unfair Claims Settlement Practices Act, acted in bad faith in denying coverage, and breached the insurance contract. [*Id.* at ¶¶ 32–59] West Bend removed the action to this Court on October 5, 2020. [Record No. 1]

---

[3]   Friedlander was later dismissed as a nominal party to this action. [Record No. 17]

**II.**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Such motions are evaluated under the same standard applicable to a Rule 12(b)(6) motion to dismiss for failure to state a claim, which challenges the sufficiency of a complaint. *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001).

A complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). At this procedural stage, LexFit's "well-pleaded factual allegations" are accepted as true, and the Court must "determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).[4] A complaint must "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). By contrast, a complaint that merely "offers 'labels and conclusions' or 'a formulaic recitation of the

---

[4] The Court will consider the policy document attached to West Bend's motion as Exhibit 2. [*See* Record No. 23-2.] A "written instrument" attached to a pleading "is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). But "Rule 12(b)(6), besides some minor exceptions, does not permit courts to consider evidence extrinsic to the pleadings." *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 487 (6th Cir. 2009) (citations omitted). One exception applies here: "Where the plaintiff fails to introduce a pertinent document as part of [its] pleading, defendant may introduce the exhibit as part of [its] motion attacking the pleading." *Thomas v. Publishers Clearing House, Inc.*, 29 F. App'x 319, 322 (6th Cir. 2002) (citations omitted).

In its Complaint, LexFit repeatedly referenced—but did not include as an exhibit—the policy document attached as an exhibit to West Bend's motion. [*See* Record Nos. 1-1; 23-2.] There is no dispute that the policy document accurately reflects the parties' agreement, and LexFit does not object to the Court's consideration of the policy document here.

elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555); *see also Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) ("Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.").

### III.

Kentucky law governs this dispute.[5] *See Liberty Corp. Capital Ltd. v. Sec. Safe Outlet, Inc.*, 937 F. Supp. 2d 891, 897 (E.D. Ky. 2013) (citation omitted) ("In exercising diversity jurisdiction, the court must apply state law in accordance with the controlling decisions of the highest state court."). Interpretation and construction of an insurance contract is a matter of law for the court under Kentucky law. *Kemper Nat. Ins. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 871 (Ky. 2002). An insurance contract that is not ambiguous or self-contradictory must be read "according to its plain meaning, its true character and purpose, and the intent of the policies." *Liberty Corp. Capital Ltd.*, 937 F. Supp. 2d at 898 (citing *Peoples Bank & Trust Co. v. Aetna Cas. & Sur. Co.*, 113 F.3d 629, 636 (6th Cir. 1997)). In general, "[w]hen the terms of an insurance contract are unambiguous and not unreasonable, they will be enforced." *Id.* at 898 (quoting *Ky. Ass'n of Counties All Lines Funds Tr. v. McClendon*, 157 S.W.3d 626, 630 (Ky. 2005)).

### A. The Insurance Policy

West Bend issued policy number A481881-02 to LexFit covering the period February 1, 2020 to February 1, 2021. [Record Nos. 1-1, ¶ 2; 23-2] Its commercial property coverage provisions cover "direct physical loss or damage to Covered Property . . . caused by or

---

[5] The parties agree that Kentucky law applies. [Record Nos. 23-1, pp. 9–10; 25, pp. 7–8]

resulting from any Covered Cause of Loss." [Record No. 23-2, p. 50] Covered Cause of Loss "means direct physical loss unless the loss is excluded or limited in this policy." [*Id.* at 78]

*Business Income Coverage.* When direct physical loss or damage occurs, the policy provides business income coverage. Specifically, it states:

> We will pay for the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration'. The 'suspension' must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

[*Id.* at 66] It also covers "extra expenses" incurred during the "'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss." [*Id.*] West Bend pays extra expenses to "[a]void or minimize the 'suspension' of business and to continue operations at the described premises" or alternative locations. [*Id.*]

*Civil Authority Coverage.* The policy also covers losses of business income "caused by action of civil authority that prohibits access to the described premises." [*Id.* at 67] This coverage applies when the covered premises itself is not damaged, but "a Covered Cause of Loss causes damage to property other than property at the described premises." [*Id.*] Two circumstances must be present for a civil authority's action to trigger coverage. First, access to the area surrounding the damaged property must be limited and the insured's premises must be within one mile of the damaged property. [*Id.*] And second, the civil authority must have acted in response to "dangerous physical conditions" or in order to "have unimpeded access to the damaged property." [*Id.*]

### B. Analysis

The terms at issue here are not ambiguous. The business income coverage requires "direct physical loss of or damage to" the covered premises. [Record No. 23-2, p. 66] The civil authority coverage requires "damage to property" within one mile of the covered premises. [*Id.* at 67] And both provisions require the occurrence of a "Covered Cause of Loss." [*Id.* at 66, 67] The meanings of each of these terms can be derived from the policy's own definitions or from common, dictionary definitions.

*Business Income Coverage*. West Bend agreed to cover lost business income and extra expenses after the following sequence has taken place: (1) a "Covered Cause of Loss" occurs; (2) "direct physical loss of or damage to" the covered premises is "caused by or result[s] from" the "Covered Cause of Loss"; and (3) the loss or damage causes the insured business to suspend operations to restore the business. [Record No. 23-2, p. 66] While operations are suspended, West Bend covers actual lost business income and pays extra expenses. [*Id.*]

LexFit reads the provision differently. In its view, the suspension itself (here, ordered by the government) is a "Covered Cause of Loss." [Record No. 25, p. 8] And the direct physical loss caused by the closure is "a direct physical loss of income." [*Id.* at 9] It says, "the requirement that there be a direct physical loss is satisfied in regard to a special cause of loss if the cause of loss was the result of a covered cause." [*Id.* at 9–10] It reaches this conclusion based on a single provision in the policy: "When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy." [Record No. 23-2, p. 78]

In short, LexFit offers the broadest possible definition of "Covered Cause of Loss" and argues that its broad definition governs the meaning of the phrase "direct physical loss." [Record No. 25, pp. 9–10] This reading requires the Court to make two assumptions which are unsupported by the plain meaning of the policy. The first is that any occurrence not covered by an exclusion or limitation is necessarily a "Covered Cause of Loss." The second, related assumption is that any "Covered Cause of Loss"—any occurrence not explicitly excluded by the policy—must *necessarily* be a direct physical loss, even where, as here, the covered premises sustain no tangible loss or damage. But the proper reading of the policy—one that says that any non-excluded "direct physical loss" is a "Covered Cause of Loss"—requires neither assumption.

A basic principle of contract law supports this proper interpretation: an exclusion clause can only subtract from coverage, it cannot grant it. *Kemper Nat'l Ins. Co.*, 82 S.W.3d at 872–73 (citations omitted). Accordingly, LexFit must do more than point to the absence of an applicable exclusion to allege that the Closure Order was a "Covered Cause of Loss," as defined by the policy. It has not done so here. Further, it has failed to address how the Closure Order can be both the first step in the sequence that triggers business income coverage (the "Covered Cause of Loss") and the third step (the suspension of operations caused by the "Covered Cause of Loss") at the same time. These unanswered questions reveal that the policy's definition of "Covered Cause of Loss" is a narrow one, inextricably linked with the proper definition of "direct physical loss."

The phrase "Covered Cause of Loss" is defined by the agreement itself. As noted above, "Covered Causes of Loss means direct physical loss unless the loss is excluded or

limited in this policy." [Record No. 23-2, p. 78] And while "direct physical loss" is undefined by the agreement, it has a plain meaning. Kentucky law thus requires that it be interpreted "according to the usage of the average man and as they would be read and understood by him in the light of the prevailing rule that uncertainties and ambiguities must be resolved in favor of the insured." *Fryman v. Pilot Life Ins. Co.*, 704 S.W.2d 205, 206 (Ky. 1986) (citing *Donohue v. Wash. Nat. Ins. Co.*, 82 S.W.2d 780 (Ky. 1935).

LexFit argues that "direct physical loss is referring to and focused on what business income actually is, or stated another way, the direct physical loss of net income." [Record No. 25, p. 9] West Bend suggests that it actually requires tangible harm to the covered premises. [Record No. 23-1, pp. 10–14] Both dictionary definitions and the "great weight of decisions recently considering this issue in the midst of the current pandemic" support West Bend's arguments. *Bluegrass Oral Health Ctr. v. Cincinnati Ins. Co.*, 2021 U.S. Dist. LEXIS 50639, at *9–11 (W.D. Ky. Mar. 18, 2021) (collecting cases).

First, before reaching for any dictionary or caselaw, LexFit's proposed definition conflicts with the language of the policy, which requires a "direct physical loss of or damage to *property at premises* . . ." [Record No. 23-2, p. 66 (emphasis added).] By its terms, business income is not the property covered by the policy; rather, losses of business income covered only when the property at the premises is lost or damaged. LexFit offers no support for its conclusion that business income constitutes "property at premises" under the policy. [*Id.*]

Additional reasons confirm that loss of income does not constitute "direct physical loss." Courts across the country have determined "that a direct physical loss requires a tangible alteration of property." *Bluegrass Oral Health Ctr.*, 2021 U.S. Dist. LEXIS 50639, at *7

(citing 10A Steven Plitt et al., *Couch on Insurance* § 148:46 (3d ed. Dec 2020 update)).  The court in *Bluegrass Oral Health Center* confirmed these numerous decisions by looking to the primary dictionary definitions of both "Loss" and "Physical."  *Id.* at *10–11 (citing *Loss*, Merriam-Webster, https://www.merriam-webster.com/dictionary/loss (last visited June 9, 2021) ("Destruction, ruin."); *Physical*, Merriam-Webster, https://www.merriam-webster.com/dictionary/physical (last visited June 9, 2021) ("[C]haracterized or produced by the forces an operations of physics.")).  It found that "in context, 'physical loss' would mean destruction or ruin produced by the forces of operation of physics."  *Id.*

This definition requires tangible harm or damage to the property covered by the agreement.  Accordingly, a purely economic loss cannot qualify as a "direct physical loss."  *See, e.g.*, *Sys. Optics, Inc., v. Twin City Fire Ins. Co.*, 2021 U.S. Dist. LEXIS 97491, at *25 (N.D. Ohio May 24, 2021) ("'[D]irect physical loss' requires some actual harm to the structure rendering it uninhabitable or unusable . . . 'superficial or intangible effects' of a government closure due to the spread of COVID-19 represent purely economic losses that do not trigger coverage.").  As LexFit has offered no authority to the contrary, the Court will adopt this reasonable definition here.

To summarize, a "direct physical loss" covers "the continuum of harm from total (loss) to partial (damage) resulting in alteration to an insured property."  *Bluegrass Oral Health Ctr.*, 2021 U.S. Dist. LEXIS 50639 at *11 (citation omitted).  The policy here narrows the range of direct physical losses by including exclusions and limitations.  [Record No. 23-2, p. 78]  Any non-excluded "direct physical loss" is a "Covered Cause of Loss."  [*Id.*]  The upshot is that without an allegation of a non-excluded "direct physical loss," LexFit cannot plausibly claim

that it is entitled to relief. Here, the only alleged loss is a loss of business income and "of goodwill built by LexFit with its patrons." [Record No. 1-1, ¶ 18; 25, p. 9] Because neither falls under the definition of "direct physical loss," LexFit is not entitled to relief under the business income coverage provisions.

*Civil Authority Coverage.* West Bend also covers the loss of business income and expenses when (1) a "Covered Cause of Loss" causes damage to a property other than the covered property; (2) the damaged property is within one mile of the covered property; and (3) a civil authority prohibits access to the covered property due to "dangerous physical conditions" or to "have unimpeded access to the damaged property. [Record No. 23-2, p. 67] Assuming that the Closure Order was a "Covered Cause of Loss," LexFit argues that the Closure Order caused damage to the businesses surrounding LexFit, therefore, the coverage provision applies. [Record No. 25, p. 10–12]

The definition of "Covered Cause of Loss" outlined above—a non-excluded "direct physical loss"—applies with equal force here. Accordingly, LexFit has also failed to allege that it is entitled to civil authority coverage. But the undersigned notes that it has again asked the Court to ignore the plain meaning of the agreement and assume the parties intended a more complicated approach. The policy agreement requires a clear sequence: a "Covered Cause of Loss" must cause damage to a nearby property which must cause a civil authority to prohibit access to the covered property. [Record No. 23-2, p. 67]

To LexFit, the Closure Order is both the cause of the economic losses at nearby properties and the governmental action prohibiting access to its own property. [Record No. 25, p. 10–12] But the policy clearly requires that the civil authority action respond to the

- 10 -

underlying property damage, and an action cannot respond to itself. The Closure Order undoubtedly harmed LexFit, but it was not the type of civil authority action contemplated by the parties in agreeing to this insurance coverage.

### IV.

Without allegations of tangible, physical loss or damage to the covered premises or its surroundings, LexFit has not demonstrated that it is entitled to relief on its claims.[6] Therefore, West Bend is entitled to judgment on the pleadings. Accordingly, it is hereby

**ORDERED** as follows:

1.  Defendant West Bend Mutual Insurance Company's motion for judgment on the pleadings [Record No. 23] is **GRANTED**.

2.  Defendant West Bend Mutual Insurance Company's motion to exclude LexFit's expert report [Record No. 26] is **DENIED**, as moot.

3.  Defendant West Bend Mutual Insurance Company's motion for leave to file supplemental authority [Record No. 41] is **DENIED**.

---

[6] The Court notes that even if LexFit had alleged harm covered by the terms of the insurance policy, any recovery would likely be foreclosed by the virus exclusion. It states that West Bend "will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." [Record No. 32-2, p. 77] The parties agree that the Closure Order was the result of the virus, but they disagree about whether the losses and damages claimed resulted from the virus. [Record No. 25, pp. 13–14] Because no direct physical loss is alleged to have occurred, the Court need not decide whether an exclusion applies here. However, "other courts to have addressed the issue have determined that loss-of-use claims like the plaintiff's are barred by the applicable virus exclusions." *J&H Lanmark v. Twin City Fire Ins. Co.*, 2021 U.S. Dist. LEXIS 44899, at *8 (E.D. Ky. Mar. 10, 2021) (collecting cases).

4. The jury trial previously scheduled to begin October 4, 2021, is **CANCELED**. All other deadlines set out in the Scheduling Order [Record No. 9] and Amended Scheduling Order [Record No. 20] are **VACATED**.

Dated: June 10, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky